UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Terry Morgan, Regional Director of
Region Seven of the National Labor Relations
Board, on behalf of the National Labor Relations
Board,

    Petitioner,                                           Case No.: 13-14686

v.                                                               Honorable Sean F. Cox

Holy Cross Youth and Family Services, Inc.,
d/b/a Kairos Healthcare,

    Respondent.
_____/

**OPINION GRANTING PETITION FOR PRELIMINARY INJUNCTION UNDER
SECTION 10(J) OF THE NATIONAL LABOR RELATIONS ACT**

       This case involves a labor dispute. Petitioner Terry Morgan, Regional Director on behalf of the National Labor Relations Board ("Petitioner" or "the Board") claims that Respondent Holy Cross Youth and Family Services ("Respondent" or "Holy Cross") has committed unfair labor practices in its dealings with the union that represents some of its employees. The Board has served a complaint on Respondent setting forth its claims. That complaint is currently being adjudicated before an Administrative Law Judge ("ALJ").

       This matter is before the Court on the Board's Petition for Preliminary Injunctive Relief Pursuant to section 10(j) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 160(j). Respondent opposes the Board's petition. The petition has been fully briefed and this Court heard oral argument on February 6, 2014. For the reasons set forth herein, this Court shall GRANT the Board's request for preliminary injunctive relief.

1

**BACKGROUND**

Respondent is a drug and alcohol rehabilitation service provider doing business in Bridgeport, Michigan and Saginaw, Michigan. In February 2012, Respondent purchased the assets of Kairos Health Care, Inc. ("Kairos") in a bankruptcy proceeding. (Resp. Supp. Br. at 2). Respondent hired approximately half of Kairos' former employees, who had been represented by the Service Employees International Union, AFL-CIO, Local 517 ("the union") since 2007. (Petr.'s Supp. Br. at 2; Resp.'s Br. at 2).

The union contacted Respondent shortly after the asset purchase to request that Respondent negotiate a new collective bargaining agreement. (Resp.'s Br. at 2). The parties stipulate that the bargaining unit includes all regular full time and regular part time technicians, treatment specialists and transporters, but does not include temporary on call ("TOC") employees. (Petr.'s Supp. Br. at 3). Petitioner has attached an accurate list of both bargaining unit and TOC employees. (Petr.'s Reply Br. at Ex. 19).

The union and Respondent participated in several negotiation sessions.[1] (Resp.'s Br. at 2). Petitioner claims that by October 2012, the union and Respondent had resolved "most of the noneconomic issues and were ready to address the economic parts of the agreement." (Petr.'s Supp. Br. at 4; ALJ Hearing Transcript, attached to Petr.'s Supp. Br. At Ex. 26 and 27, at p. 34).

Unbeknownst to either side of the table, one of Respondent's employees, Jeanette Amos, was circulating a petition for decertification in and around December 2012. (Resp. Supp. Br. At 3). The petition contained the signatures of 21 of Respondent's employees. (Petr.'s Supp. Br. At 4; Petr.

---

[1] These meetings took place on the following dates: March 6, 2012; August 28, 2012; September 19, 2012; March 13, 2013; and April 24, 2013. (Resp.'s Br. at 2).

Supp. Br. At Ex. 26 p. 39). Amos delivered the petition to the union's office, characterizing it as a petition to "vote the union out," (Petr.'s Supp. Ex. 26 at p. 208). The petition was never filed with the NLRB. (Petr.'s Supp. Br. at p. 4). Respondent appears to claim that the union tried to conceal the fact that it had received a petition for decertification from Amos. (Resp. Supp. Br. at 4).

In the Spring of 2013, the union circulated authorization cards, which sought the employees' affirmation that a majority of them still wanted to be represented by the union. (Petr.'s Supp. Br. At 5). The union's efforts garnered 22 authorization cards in all, 18 of which were signed by bargaining unit employees. (Petr.'s Supp Br. At 6; *see also* Authorization Cards, attached to Petr.'s Reply Br. at Ex. 21).

At the April 2013 meeting, Respondent apparently raised the issue of the decertification petition, stating that he had "seen the petition and was concerned about it." (Petr.'s Supp. Br. At 7; *see also* Ex. 26 at 158). At that point, the union showed Respondent its stack of union authorization cards and told Respondent that the union did, in fact, have majority support. (Petr.'s Supp. Br. At 7). Petitioner claims Respondent never asked to see the individual authorization cards.

Despite the continued underlying dispute regarding the union's actual support, the parties continued to negotiate. The union requested that Respondent provide a list of unit and TOC employees and a summary of hours worked by TOC employees. (Petr.'s Br. at 8). Petitioner further claims that after the union made that request, Respondent's attorney "abruptly ended the bargaining session." (Petr.'s Br. at 8; Petr.'s Br. At Ex. 12 p. 12).

Respondent states that the meeting was terminated, in part, because the union had deceived Respondent regarding the existence of the decertification petition. (Resp. Br. At 5). On May 1, 2013, Respondent sent the union a letter stating that

3

> we have see a copy of a petition signed by a majority of the co-workers in the Union Class indicating they no longer which to be represented by a Union, delivered to you weeks ago. While you have indicated that a majority of the co-workers support a Union, when asked for proof, you refused to provide it.
>
> We have, therefore, decided to implement a wage increase to $9.15 per hour, retroactive to the date on which we provided wage increases to co-workers not included in the Union Class.
>
> We no longer see any reason to meet with you.

(Petr.'s Br. At Ex. 14). It is undisputed that Respondent unilaterally raised the wages of union employees sometime after May 1, 2013.

Petitioner claims that the union attempted to resolve the issue with Respondent by suggesting that a third party review the petition and authorization cards to confirm that the union still had majority support. (Petr.'s Br. At 10). Respondent refused that offer, but instead suggested that an election be conducted. (Resp. Supp. Br. At 5). Respondent appears to claim that the authorization cards are "tainted" because they were obtained shortly after non-union employees received a pay raise when union employees did not. (Resp. Supp. Br. At 10-11). To date, the union and Respondent have not engaged in any further negotiations.

The union filed a charge with the National Labor Relations Board ("NLRB") on May 13, 2013, alleging, among other things, that Respondent unlawfully withdrew its recognition of the union. (Petr.'s Br. At 10). The Regional Director for the NLRB (the Petitioner here) issued a complaint against Respondent based on the union's allegations. That complaint is being adjudicated before Administrative Law Judge Mark Carissimi. A hearing in that matter was held on December 18, 2013, while Petitioner's current petition was still pending before this Court.

## APPLICABLE LAW

In general terms, the National Labor Relations Act governs the relationship between unions, employers and employees. Among other things, Congress has vested the National Labor Relations Board with the "power to prevent any person from engaging in any unlawful labor practice (listed in section 158 of this title) affecting commerce." 29 U.S.C. § 160(a).

The Board has, as one of its enforcement powers, the ability to investigate alleged unlawful labor practices and serve a complaint upon the alleged wrongdoer. 29 U.S.C. § 160(b). Upon the Board's service of the complaint, the Board can also petition the United States District Court for a preliminary injunction pending the Board's resolution of the labor dispute on the merits. *See* 29 U.S.C. § 160(j).[2]

The Board's petition for preliminary injunction pursuant to section 160(j) neither permits nor requires this Court to decide the merits of the unfair labor practice dispute. *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 28 (6th Cir. 1988). Rather, this type of temporary relief was created to "provide the NLRB with a means of preserving the status quo pending the completion of its regular procedures." *Glasser v. Precision Gage-Dearborn, LLC*, 2003 WL 22140116 at *3 (E.D. Mich. Jan. 27, 2003), *citing Levine v. C & W Mining Co.,* 610 F.2d 432, 436 (6th Cir.1979).

The Sixth Circuit employs a two-part test to determine whether the Board is entitled to a

---

[2] § 160(j) provides:

The Board shall have power, upon issuance of a complaint ... charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

preliminary injunction pending the results of the administrative proceeding. *Frye v. Specialty Envelope, Inc.*, 10 F.3d 1221, 1224 (6th Cir. 1993). The Board bears the burden of proof on both steps of the analysis. *Glasser v. Heartland University of Livonia, MI LLC*, 623 F. Supp. 2d 659, 665 (E.D. Mich. Apr. 7, 2009).

"Under the first part of the § 160(j) analysis, NLRB must prove there is reasonable cause to believe that an alleged unfair labor practice has occurred." *Specialty Envelope*, 10 F.3d at 1225. The Sixth Circuit has stated that the burden on the Board to establish reasonable cause is relatively insubstantial. *Specialty Envelope, Inc.*, 10 F.3d at 1225. "To satisfy that burden, the Director must produce *some* evidence in support of the petition" and show that the Board's theory of liability is substantial and not frivolous. *Id.*, *citing Kobell v. United Paperworkers Int'l Union*, 965 F.2d 1401, 1406-7 (6th Cir. 1992) (emphasis added). If the Board meets this burden, then "conflicting evidence will not preclude a finding of reasonable cause." *Id.*

If this Court finds that reasonable cause exists, then it must determine whether injunctive relief is "just and proper." *United Paperworkers*, 965 F.2d at 1406-7; *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987). This Court must determine "whether such relief is necessary to return the parties to the status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA, and whether achieving the status quo is possible." *Frankel,* 818 F.2d at 495 (quotations omitted). "[T]he status quo is the state of affairs before the alleged unfair labor practice took place." *Id.* The determination of what relief is just and proper is within the discretion of the district court. *United Paperworkers*, 965 F.2d at 1409.

The Board has put forth three main theories of liability against Respondent:

1)  Respondent committed an unfair labor practice by "[w]ithdrawing recognition from the Charging Union in the absence of a demonstrated showing that the Charging Union lost its majority status" (Petr.'s Br. at 11);

2)  Respondent committed an unfair labor practice by "failing and refusing to furnish information that is necessary for, and relevant to, the Charging Union's Union performance of its duties as the collective bargaining representative of the Unit"  (Petr.'s Br. at 10); and

3)  Respondent committed an unfair labor practice by "unilaterally changing the Unit's terms and conditions of employment, including granting a wage increase, without providing notice to the Charging Union and an opportunity to bargain."  (Petr.'s Br. at 11).

The Board requests that this Court enjoin Respondent from continuing to commit those unlawful practices.  (Petr.'s Br. at 9-11).

The Board also requests that this Court order Respondent to recognize and bargain in good faith with the Union, rescind any changes made unilaterally to the Unit's terms and conditions of employment upon request by the Union, and to "furnish the Charging Union with the average number of hours worked by temporary on call (TOC) residential technicians over the previous six month period."  (Petr.'s Br. at 12).

### A. Respondent's Alleged Unlawful Withdrawal of Recognition

Petitioner alleges that Respondent's withdrawal of recognition of the union was unlawful because Respondent did so at a time when the Union still had majority support, as shown by the union's collection of authorization cards signed by employees in March 2013.  (Petr.'s Br. at 18; *see also* Authorization Cards, attached to Petr.'s Reply at Ex. 21).  Petitioner argues that there is reasonable cause to believe Respondent committed this unfair labor practice because Respondent has failed to demonstrate the union's actual loss of majority status to justify its refusal to bargain after May 1, 2013.  (Petr.'s Br. at 18-19).

Respondent claims that it did not unilaterally withdraw recognition of the union. (Resp. at 5). Respondent further argues that even if it had withdrawn recognition of the union, it was permitted to do so based on the petition for decertification it received in December 2012. (*See* Petition for Decertification, attached to Resp. Supp. Br. at Ex. 2).

Petitioner maintains that the December 2012 decertification petition Respondent relied upon did not provide a legitimate basis for its withdrawal of recognition because: 1) "although it contained 21 signatures . . . [s]even of the employees who signed the petition in December were not in the unit as of May 2013, and 2) seven unit employees who signed the disaffection petition in December subsequently signed a Union authorization card in March." (Petr.'s Br. at 19).

The NLRA makes it an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees. *Glasser v. ADT Sec. Servs., Inc.*, 379 Fed. App'x 483, 486-87 (6th Cir. 2010), *citing* 29 U.S.C. § 158(a)(5). As an initial matter, this Court finds that the evidence as presented supports the conclusion that Respondent withdrew recognition of the Union.

First, Respondent refused to further negotiate with the Union after April 2013 based on the decertification petition, and sent a letter to the Union indicating as much. (Resp. at 4). These actions, together, likely constitute a *de facto* withdrawal of recognition. *Control Services, Inc.*, 303 NLRB 481, 493 (1991), *enf'd* 961 F.2d 1568 (3rd Cir. 1992) (refusal to meet and bargain constituted effective withdrawal of recognition.).

Next, a withdrawal of recognition is unlawful if the employer does not have actual proof of the loss of majority of employees who support the Union at the time it withdrew recognition. *Vanguard Fire & Supply Co., Inc. v. N.L.R.B.*, 468 F.3d 952, 957 (6th Cir. 2006) ("an employer may

only withdraw recognition where the union has actually lost the support of the majority of the bargaining unit employees."). It is the employer's burden to show an actual loss of the union's majority support at the time of withdrawal. *HQM of Bayside LLC,* 348 NLRB 758, 759 (2006). "In attempting to show a loss of a union's majority status, an employer is not entitled to rely on signatures of employees who subsequently demonstrated support for the union." *Id.* at 759.

While Respondent maintains that it had 14 of 25 employee signatures on the December 2012 disaffection petition, Petitioner maintains that seven of those employees later signed a union authorization card in March, and that seven of the disaffection petition signatures were therefore nullified. On that basis, Petitioner argues, Respondent was unable to prove that the union lost a majority of its support because the disaffection petition did not have a valid majority of signatures.

It is not this Court's duty to decide whether Respondent actually committed an unfair labor practice, but whether Petitioner has established *reasonable cause* to believe that Respondent did so. Petitioner has come forth with a "substantial, and not frivolous" argument, which is supported by some evidence, that permits this Court to find reasonable cause that Respondent committed a violation of the NLRA by unlawfully withdrawing recognition of the union.

Having found that Petitioner established reasonable cause for finding that Respondent committed this unfair labor practice, this Court must determine whether the temporary relief Petitioner seeks is "just and proper." *United Paperworkers*, 965 F.2d at 1406. Relief is "just and proper" if it is necessary to return the parties' positions to the status quo in order to protect the Board's remedial powers. *Id.*

Petitioner argues that this Court's order requiring Respondent to recognize and bargain in good faith with the union is necessary to prevent complete breakdown of employee support for the

9

union. The Sixth Circuit has, in other cases, accepted the Board's argument that a temporary injunction is just and proper if it is "necessary to prevent further erosion of union support." *Specialty Envelope, Inc.*, 10 F.3d at 1227; *see also Precision-Gage*, 2003 WL 22140116 at *7. Respondent argues that an injunction is not warranted because the trial before the ALJ has already occurred, and that Petitioner has presented no evidence that support for the union is "waning or eroding." (Resp. at 10).

This Court finds Petitioner's argument more persuasive. The Sixth Circuit and other courts in this District have found that a Petitioner's concern of an erosion of union support is a compelling reason to render temporary injunctive relief "just and proper."

Therefore, based on Petitioner's showing of reasonable cause combined with a finding that injunctive relief would be just and proper, this Court GRANTS the petition and ORDERS Respondent to bargain with the union in good faith pending a final determination by the Administrative Law Judge.

### B. Respondent's Alleged Unlawful Refusal To Provide Information To Union Regarding TOC Employees

Petitioner next alleges that Respondent committed an unfair labor practice by refusing to provide the union with information the union requested during negotiations. (Petr.'s Br. at 20). Respondent argues that it provided all requested information to the union, and that the union is not entitled to information regarding TOCs because it has not established the relevance of such information. (Resp. Br. at 17).

The Sixth Circuit has explained in detail the employer's duty to provide requested information to the union:

> It is well settled that the duty to bargain collectively, imposed upon an employer by

10

> § 8(a)(5) of the National Labor Relations Act, includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative. In evaluating an employer's obligation to fulfill the union's information requests, the Board and courts apply a discovery type standard, under which the requested information need only be relevant and useful to the union in fulfilling its statutory obligations in order to be subject to disclosure. However, [a] union's bare assertion that it needs information does not automatically oblige the employer to supply all the information in the manner requested. The union's interest in arguably relevant information does not always predominate over other legitimate interests.
>
> As to information regarding bargaining unit employees, there is a presumption that the information sought is relevant to the union's bargaining obligation. However, when the information requested of an employer is about employees or operations other than those represented by the union, it is necessary for the union to prove relevancy without the benefit of any presumption.

*E. Tenn. Baptist Hospital v. NLRB*, 6 F.3d 1139, 1143 (6th Cir. 1993) (citations and quotations omitted).

It is undisputed that the information the union sought was in regards to non-union employees. Therefore, per *East Tennessee*, it is the union's burden to show that the information is relevant to its statutory duties. The parties appear to agree that, during negotiations, one of the issues discussed was the definition of the bargaining unit and whether TOC employees should be included. Respondent took the position that TOC employees should not be included in the bargaining unit because they do not work enough hours on a regular basis. (Confidential Affidavit, attached to Petr.'s Br. at Ex. 8 p. 3). Petitioner stated at oral argument that the union sought information regarding TOC employees' hours worked in order to enable the union to effectively bargain with Respondent.

This Court finds that Petitioner has established reasonable cause to believe that Respondent has committed an unfair labor practice in failing to produce requested information. As set out in *E. Tenn. Baptist Hospital v. NLRB*, an employer has a duty to furnish information to the union as part

11

of its general obligation to bargain collectively. 6 F.3d at 1143. Further, because the parties had been negotiating regarding the proper definition of the bargaining unit, and because Respondent argued that TOC employees should be excluded based on lack of regular hours worked, the information regarding the hours worked by TOC employees was likely relevant for the union to be properly informed and prepared to negotiate. Thus, Petitioner has established that it was entitled to the information requested and that Respondent failed to provide it.

This Court also finds that a preliminary injunction is just and proper under the circumstances. Petitioner argued, at oral hearing on the petition, that Respondent should be required to produce the information to facilitate the bargaining process pending a ruling from the administrative law judge. Without this information, the likelihood of a final conditional employment agreement would be reduced, and thus the entire purpose of these proceedings thwarted.

Therefore, this Court GRANTS Petitioner's request for a preliminary injunction, and ORDERS Respondent to furnish the union with the average number of hours worked by TOC employees over the previous six month period.

### C. Respondent's Alleged Unlawful Raise To Bargaining Unit Employees

Petitioner alleges that Respondent committed an unfair labor practice by unilaterally giving bargaining unit employees a pay increase without first giving the union an opportunity to bargain for the wage increase. (Petr.'s Br. at 21). In support of its claim, Petitioner points to a letter the union received from Respondent, which indicates that Respondent was no longer going to bargain with the union and that "[Respondent has], therefore, decided to implement a wage increase to $9.15 per hour, retroactive to the date on which we provided wage increases to co-workers not included in the Union Class." (Petr.'s Br. at p. 9; Letter from Holy Cross to Union, attached to Pet's Br. at

12

Ex. 14).

Respondent does not dispute that it gave a raise to union employees without first bargaining with the union. Respondent argues for the first time in its Supplemental Brief that the wage increase was consistent with Respondent's promise to its employees that wages would be reviewed annually, and also that Respondent was merely comporting with its established practice and custom to "review and adjust compensation annually." (Resp. Supp. Br. at 14).

This Court is to decide, under the applicable law, whether Petitioner has shown reasonable cause to believe an unfair labor practice has been committed. Petitioner has made such a showing. That Respondent unilaterally raised the wages of union employees is undisputed. The United States Supreme Court has explained that doing so constitutes an unfair labor practice:

> Sections 8(a)(5) and 8(d) of the NLRA, 29 U.S.C. § 158(a)(5) and (d), require an employer to bargain in good faith with respect to wages, hours, and other terms and conditions of employment. The Board has taken the position that it is difficult to bargain if, during negotiations, an employer is free to alter the very terms and conditions that are the subject of those negotiations. The Board has determined, with our acceptance, that an employer commits an unfair labor practice if, without bargaining to impasse, it effects a unilateral change of an existing term or condition of employment.

*Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 198 (1991).

This Court must also determine whether it would be "just and proper" to enjoin Respondent from making unilateral changes to union employee conditions. Petitioner argues that "the Respondent's unlawful conduct, *particularly the unilateral wage increase*, will undermine the employees' support for the Union. That support will continue to erode absent an interim bargaining order . . . ." (Petr.'s Br. at 24). Respondent does not address Petitioner's argument.

This Court finds Petitioner's argument persuasive. As the United States Supreme Court recognized, all collective bargaining would be moot if an employer is able to unilaterally alter the

13

employment conditions of bargaining unit workers. *See Litton Fin. Printing*, 501 U.S. at 198. Here, any bargaining between the parties would essentially be futile if Respondent can forego the bargaining process and make unilateral changes to employment conditions for those represented by the union. Therefore, this Court finds that the grant of an injunction is just and proper under the circumstances.

      This Court finds reasonable cause that Respondent committed an unfair labor practice by implementing a unilateral wage increase for bargaining unit employees. This Court further finds that a preliminary injunction would be just and proper under the circumstances to maintain the status quo pending the outcome of the administrative process. Therefore, based on the foregoing, this Court ORDERS Respondent to, if requested by the union, rescind any changes that Respondent unilaterally made to bargaining unit employees' terms and conditions of employment.

## CONCLUSION

      For the reasons set forth above, this Court GRANTS Petitioner's Request For Preliminary Injunction Under Section 10(j) of the National Labor Relations Act. A separate Order will follow.

                                  S/Sean F. Cox
                                  Sean F. Cox
                                  United States District Judge

Dated: February 21, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 21, 2014, by electronic and/or ordinary mail.

                                  S/Jennifer McCoy
                                  Case Manager